**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-02801-CNS-MDB

DWIGHT D. YORK,
a/k/a Malachi Z. York,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

---

**RESPONSE IN OPPOSITION TO MOTION
FOR A TEMPORARY RESTRAINING ORDER (ECF No. 2)**

---

Plaintiff Dwight York, an ADX inmate, claims that on one occasion a few weeks ago, he was denied a legal visit with an attorney and another person alleged to be "the Ambassador of Liberia." ECF No. 2 ¶¶ 4-5. He seeks a temporary restraining order ("TRO") that would prevent the Federal Bureau of Prisons from denying him access to the attorney. *Id.* ¶ 1.

Mr. York's motion lacks merit and should be denied. He has not exhausted his administrative remedies concerning the incident, which occurred on October 22, 2022, nor can he meet the high burden to show that he is entitled to the extraordinary remedy of a TRO. The visit did not occur because the BOP could not verify the credentials of the individual purporting to be the "Ambassador of Liberia." When the attorney later emailed a BOP counselor asking to have a legal visit alone with Mr. York, the BOP counselor failed to notice the email and, as a result, did not submit the paperwork to allow the visit to proceed. Consequently, this entire case is based on a

simple mix-up in the processing of a single visit to the ADX. Notably, Mr. York has communicated with this attorney repeatedly in-person, over the phone, and through mail over the course of many years. This one-time, inadvertent error has been rectified, and Mr. York and his attorney had an in-person legal visit on November 18, 2022, and a legal call on November 9, 2022.

As for the "Ambassador of Liberia" who accompanied York's attorney on October 22, 2022, the Department of State has confirmed that this individual is not registered as a diplomat of Liberia to the United States. The Department of State is likewise unaware of any request by the government of Liberia to allow this individual to engage in a visit with Mr. York.

## BACKGROUND

Mr. York is the leader of the Nuwaubians. He was convicted in the United States District Court for the Middle District of Georgia and sentenced to 1,620 months' incarceration (135 years) for numerous offenses, including interstate transportation of minors with the intent to engage in unlawful sexual activity. *See United States v. York*, 428 F.3d 1325 (11th Cir. 2005).

Mr. York filed this complaint and accompanying TRO motion on October 24, 2022, two days after his attorney, Charles Tucker, and another person, the "Ambassador of Liberia," were not allowed entry to the ADX for a visit with Mr. York. ECF Nos. 1, 2. Mr. York contends that BOP officials knew that Mr. Tucker and the "Ambassador of Liberia," a person named Wendell Jesse Emmanuel McIntosh, were "coming for the legal visit," but that Mr. Tucker and Mr. McIntosh were not allowed to enter the institution and "the legal visit never occurred." ECF No. 1 ¶ 6.

In two claims, one styled as a First Amendment claim and the other as a Sixth Amendment claim, Mr. York attempts to allege a violation of the right of access to the court. *Id.* ¶¶ 13, 19. He seeks an order "[i]mmediately allow[ing] access to the Court and visitation with his Attorney," as

2

well as attorneys' fees and costs, travel expenses, and nominal and punitive damages. *Id.* at p. 5. The TRO motion rests on the same allegations and legal arguments, ECF No. 2 ¶¶ 2-5, 13, and seeks "a temporary restraining order against the Defendant for the alleged violations of his right to speak with his attorney and access the court[.]" *Id.* ¶ 9.

Mr. York has not exhausted the claims he raises in his complaint that are replicated in the TRO motion, all of which involve the denial of the visit on October 22, 2022. Indeed, Mr. York has not filed *any grievances in more than two years*: he last filed a grievance in August 2020. Ex. 1, Grow Decl. ¶¶ 9-10.

Moreover, the legal visit with Mr. Tucker did not occur because of an inadvertent error. As the counselor states in a sworn declaration, he initially calendared a visit for Mr. Tucker, the attorney, and Mr. McIntosh, the "Ambassador of Liberia," on October 22, 2022, but because BOP was unable to verify Mr. McIntosh's credentials, he emailed Mr. Tucker on October 18, 2022, and informed him the visit was not approved at that time. Ex. 2, Robinson Decl. ¶¶ 3-4. The confusion occurred when the counselor overlooked Mr. Tucker's response, in which Mr. Tucker requested that he alone be approved to visit with Mr. York. *Id.* ¶ 5.

Having failed to notice Mr. Tucker's subsequent communication, the counselor did not submit the necessary paperwork for a legal visit before October 22, 2022, and when Mr. Tucker arrived at the ADX, he was not permitted to enter the institution. *Id.* ¶¶ 5-6. This denial was because, for security reasons, all visits and visitors to the ADX must be pre-approved prior to the date of the visit, and Mr. Tucker's visit was not. *Id.* ¶ 6. Notably, however, Mr. Tucker is in no way restricted in visiting with Mr. York. *Id.* ¶ 7. In fact, Mr. Tucker had a legal call with Mr. York on November 9, 2022, and a legal visit with Mr. York on November 18, 2022. *Id.* Further, Mr. Tucker

3

has communicated with Mr. York repeatedly in-person, over the phone and through mail, over the course of numerous years. *Id.* ¶ 2.

As for Mr. McIntosh, the "Ambassador of Liberia,"[1] the Department of State confirms that there is no individual named Wendell McIntosh who is registered to the United States as a diplomat for the government of Liberia. Ex. 3, Wilson Decl. ¶ 3. Moreover, the Department of State is not aware of any request from the government of Liberia to allow a person named Wendell McIntosh to engage in a visit with Mr. York. *Id.* ¶ 4. Given that, it is not surprising the BOP could not verify McIntosh's credentials as the "Ambassador of Liberia."

## LEGAL STANDARDS

"The standard for a TRO is the same as that for a preliminary injunction." *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020) (citing *Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002)). "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1245-46 (10th Cir. 2017) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)); *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (explaining that this "extraordinary and drastic remedy" requires that "the right to relief must be clear and unequivocal"). To succeed on a motion for a preliminary injunction—and, therefore, a motion for a TRO—the moving party bears the high burden to make a "clear showing" on each of four required factors: (1) a likelihood of

---

[1] The Embassy of Liberia's website contains no reference to Mr. McIntosh. The website states that George S.W. Patten Sr. was the Ambassador of Liberia until he was recalled on September 15, 2022, and that Jeff Gongoer Dowana was nominated as the new Ambassador. *See* Embassy of the Republic of Liberia in the United States, available at https://www.liberianembassyus.org/in-the-news/president-weah-nominates-new-ambassador-to-the-us (Sept. 16, 2022).

4

success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20, 22.

The Prison Litigation Reform Act ("PLRA") further limits the relief that can be granted: "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A), (b)(2).

## ARGUMENT

The Court should deny Mr. York's motion because it suffers from fatal deficiencies. First, the claims are not exhausted. Second, Mr. York falls far short of meeting the demanding standards to obtain a TRO.

### I.   Mr. York has failed to exhaust any administrative remedies.

Mr. York cannot obtain a TRO because he failed to exhaust his administrative remedies.[2] The PLRA requires that an inmate must exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). The Supreme Court has made clear that this exhaustion requirement applies to all suits regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and that "unexhausted claims cannot be brought in court," *Jones v. Bock*, 549 U.S. 199, 211 (2007).

---

[2] The BOP has simultaneously filed a motion for summary judgment on identical grounds. Because Mr. York failed to exhaust his administrative remedies prior to filing suit, the Court should grant summary judgment in favor of the BOP and dismiss the action without prejudice.

5

An inmate "is required to exhaust administrative remedies before seeking a TRO or a preliminary injunction, just as he is required to do before seeking other remedies covered by the PLRA." *Nellson*, 454 F. Supp. 3d at 1092 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("When a prison inmate seeks injunctive relief a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them."), and *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (addressing exhaustion before reaching the merits of a plaintiff's request for a preliminary injunction)); *see also Thomas v. Carson*, 30 F. App'x 770, 771-72 (10th Cir. 2002) (upholding denial of preliminary injunction because inmate failed to exhaust his remedies, and thus was not likely to succeed on the merits of his constitutional claims). And the Supreme Court has emphasized that the PLRA is a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate … from its textual mandate." *Ross v. Blake*, 578 U.S. 632, 639-40 (2016).

The PLRA requires "proper exhaustion," which mandates that a prisoner must comply with all prison grievance procedures. *Jones*, 549 U.S. at 205; *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (holding the PLRA "demands compliance with an agency's deadlines and other critical procedural rules"). A prisoner must exhaust all of his available administrative remedies before filing his civil action. *Jones*, 549 U.S. at 202; *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002). For federal prisoners, this requires timely completing all stages of the BOP's administrative remedy program prior to filing suit. 28 C.F.R. §§ 542.10-542.19; Ex. 1, Grow Decl. ¶¶ 3-5.

To date, Mr. York has not pursued *any* administrative remedies at any stage concerning the incident on October 22, 2022. Ex. 1, Grow Decl. ¶¶ 9-10. In fact, at the time of this filing, the last administrative remedy Mr. York filed was over two years ago, on August 28, 2020. *Id.* ¶ 9. The

Court should deny the TRO motion because Mr. York failed to exhaust his administrative remedies before seeking judicial relief.

**II.     Mr. York fails to show that he is entitled to a temporary restraining order.**

Mr. York also fails to make the clear showing on *any* of the four required factors that must established to be entitled to the "extraordinary and drastic remedy" he seeks.

**Failure to show likelihood of success on the merits.** Mr. York fails the first prong of the TRO test: he cannot demonstrate a likelihood of success on the merits on his access-to-courts claims. *Winter*, 555 U.S. at 20.

First, at the outset, because Mr. York failed to exhaust his administrative remedies, he has no likelihood of success on the merits.

Second, he cannot establish a First Amendment access-to-courts claim.  To do so Mr. York must show that he sustained an actual injury to his ability to pursue litigation. *Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996). That means he must demonstrate either (1) a "systemic official action" that frustrates his ability to prepare and file suit, or (2) that he was prevented from achieving a now-unobtainable result in past litigation. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). For either prong, Mr. York must identify a "nonfrivolous, arguable underlying claim." *Id.* at 414 (quoting *Lewis*, 518 U.S. at 353).

Mr. York fails to meet this burden. To begin with, Mr. York's complaint and motion fail to identify any underlying claim at all, let alone one that he has been unable to pursue. That alone is fatal to his claim. Moreover, Mr. York does not allege any systemic action; he alleges that one time he was not able to meet with his attorney. Mr. York likewise alleges no facts showing that he was prevented from achieving a now-unobtainable result in litigation based on this visit.

That Mr. York is unable to meet this standard is unsurprising. His allegations concern a single visit that the BOP already rectified by ensuring that Mr. York expeditiously received a legal call with his attorney on November 9, 2022, followed quickly by an in-person legal visit on November 18, 2022. Ex. 2, Robinson Decl. ¶ 7. There are no restrictions against Mr. York communicating with his attorney, beyond any rules applicable to all inmates.[3] *Id.*

Courts have consistently held that such isolated events are insufficient to amount to a First Amendment violation. *See, e.g.*, *Ybanez v. Scott*, No. 14-CV-01059-MSK-MJW, 2015 WL 1258290, at *5 (D. Colo. Mar. 17, 2015) ("Courts have frequently recognized that a single, isolated instance of inmate mail being negligently lost, destroyed, or rejected is insufficient to amount to a constitutional violation."); *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion"). The First Amendment access-to-courts guarantees only a "reasonably adequate opportunity to file nonfrivolous legal claims." *Lewis*, 518 U.S. at 356. This right is not implicated by a one-time inability to engage in a legal visit because a prison counselor missed an email request, especially where that mistake was quickly rectified.

Finally, to the extent Mr. York's claim is premised on the Sixth Amendment, that right has no implication here. *Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided

---

[3] To the extent Mr. York seeks an injunction to allow a visit from the "Ambassador of Liberia," no such request has been made by the government of Liberia. Ex. 3, Wilson Decl. ¶ 4. The Department of State has not even identified any individual named Wendell McIntosh who is registered as a diplomat representing Liberia in the United States. *Id.* ¶ 3. There is no First Amendment right to meet in person with an individual purporting to be a foreign diplomat who cannot be verified, especially at the most secure prison in the federal system. Requiring such verification is undoubtedly "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Should additional information be made available, the BOP remains willing to reassess whether an in-person visit is appropriate.

by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"). Mr. York is not facing any criminal prosecution; his prosecution and appeals ended a decade ago. Even if Mr. York were considering pursuing a collateral attack against his conviction, that does not implicate the Sixth Amendment. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today."); *United States v. Snitz*, 342 F.3d 1154, 1158 (10th Cir. 2003) ('[T]he right to counsel extends to appeal but not collateral review."). And, in any event, an isolated mishap involving a single legal visit, which was rectified shortly thereafter, does not offend the Sixth Amendment.

Because granting a TRO requires a showing on each factor and Mr. York cannot meet this first factor, the Court's analysis may end here, and the TRO should be denied on this basis alone. *See Winter*, 55 U.S. at 23-24 (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief," and declining to address the likelihood of success on the merits factor).

**No showing of irreparable harm.** Mr. York has also failed to show that he faces certain, imminent, irreparable harm if the Court does not intervene at this time. *See Winter*, 555 U.S. at 20; *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (irreparable harm requires a showing of an injury that is "certain, great, actual and not theoretical," and that "is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm"). Mr. York already has spoken with his attorney by phone and had a legal visit with him in person at the ADX since the incident occurred on October 22, 2022. Ex. 2, Robinson Decl. ¶ 7. There are no restrictions against Mr. York communicating with his attorney, beyond any rules applicable to all

inmates. *Id.* As a result, Mr. York cannot establish that he faces certain, imminent, irreparable harm if a TRO is not granted. His motion may be denied on this basis alone.

**Neither the equities or the public interest favor Mr. York.** Neither the equities nor the public interest favors Mr. York. These two factors merge when the government is opposing the injunction. *Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 825 (D. Colo. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Through the PLRA, Congress has made clear that any requests for injunctive relief must be narrowly drawn, necessary to correct the violation, and be the least intrusive means. 18 U.S.C. § 3626(a)(1)(A), (b)(2). Congress recognized that there is a strong public interest against unnecessary injunctions. "[R]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," and "courts are ill equipped to deal with the increasingly urgent problems of prison administration." *Turner v. Safley*, 482 U.S. 78, 84 (1987). As the Tenth Circuit has repeatedly recognized, our "democratically elected representatives . . . are in a better position than this Court to determine the public interest[;] . . . [t]he courts' peculiar function is to say what the law is, not to second-guess democratic determinations of the public interest." *Fish v. Kobach*, 840 F.3d 710, 755 (10th Cir. 2016) (quoting *Heidman v. South Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003)).

In this case, no injunction is necessary. Courts would be inundated with lawsuits if inmates could obtain an injunction every time something went wrong with a visit or a call or a piece of mail. Mr. York's allegations are limited to a single visit when he was not able to meet with his attorney because of a mistaken oversight. Mr. York was then able to have a legal call and a legal visit with his attorney shortly thereafter. It is neither equitable nor in the public interest to enter an

injunction to address an unintentional error that BOP has already fixed. Such an injunction is wholly unnecessary, let alone the least intrusive means to address the issue.[4]

## CONCLUSION

Mr. York has failed to meet his high burden to show entitlement to a TRO. The Court should deny the motion for TRO. ECF No. 2.

Date: November 22, 2022

Respectfully submitted,

COLE FINEGAN
United States Attorney

s/ *David Moskowitz*
David Moskowitz
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
david.moskowitz@usdoj.gov
Counsel for the Federal Bureau of Prisons

---

[4] To the extent Mr. York seeks an injunction to allow a visit from the "Ambassador of Liberia," the public has no interest in having the Court override BOP's judgment that it needs to verify this individual's credentials before allowing him to visit a prisoner in the most restrictive prison in the federal system. Notably, the Department of State has also not been able to verify: (1) any individual named Wendell McIntosh registered as a diplomat representing Liberia in the United States, or (2) any request from the government of Liberia to allow a person named Wendell McIntosh to visit with Mr. York. Ex. 3, Wilson Decl. ¶¶ 3-4. Here, the BOP marshalled its prison security expertise in deciding what credentials are required for a person holding himself out as an "Ambassador" to gain access to an extremely dangerous prison. That is a judgment call that BOP is best able to make. The public has no interest in seeing Mr. York override that security decision.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on November 22, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

charles@tuckerlawgroupllp.com


<u>s/ *David Moskowitz*</u>
United States Attorney's Office